UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                              Plaintiff,

v.

                                                           Case # 14-CR-6009-FPG

                                                           DECISION AND ORDER

JERMAINE SHELTON,

                              Defendant.

---

By text order dated January 16, 2014, this case was referred to United States Magistrate Judge Jonathan W. Feldman pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). Dkt. # 7. The one-count Indictment in this case charges Defendant Jermaine Shelton ("Shelton") with possessing a firearm and ammunition after having been previously convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Dkt. # 6. The Indictment also contains a forfeiture allegation which alleges that the firearm and ammunition listed in count 1 are subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 924(d) and 3665, and 28 U.S.C. § 2461(c). *Id.*

Shelton's motion seeks to suppress the firearm that was recovered from 597 Sawyer Street in Rochester, New York on June 21, 2013. Dkt. # 25. Magistrate Judge Feldman conducted a suppression hearing on July 29, 2014 and August 4, 2014, where the sole issue was whether Shelton had standing to bring the suppression motion. Dkt. ## 34, 35. The government called two witnesses at the hearing, United States Probation Officer George Martin ("Martin") and Shante Wallace ("Wallace"), who was the lessee of 597 Sawyer Street. The only witness presented by Shelton was his sister, Monica Shelton. *Id.* After receiving post-hearing submissions from the parties (Dkt. ## 39, 42), Magistrate Judge Feldman issued his Report and Recommendation on December 17, 2014, which recommends denial of Shelton's suppression

motion. Dkt. # 48. On January 9, 2015, Shelton timely objected to Magistrate Judge Feldman's Report and Recommendation, Dkt. # 51, and the government filed their response to Shelton's Objections on January 22, 2015. Dkt. # 52.

Since Shelton has filed objections, this Court must conduct a *de novo* review as to those portions of the Report and Recommendation to which objections have been made. *See* 28 U.S.C. § 636(b)(1)(C). In doing so, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* As part of this review, the Court has considered all of the parties' submissions to date, as well as the transcript of the suppression hearing. Based upon that *de novo* review, I find no basis to alter, modify or reject Magistrate Judge Feldman's Report and Recommendation.

The suppression hearing testimony focused on the threshold issue of whether Shelton had standing to contest the seizure that occurred at 597 Sawyer Street. In that regard, the uncontroverted testimony from Probation Officer Martin established that Shelton was released from federal prison in May 2013, and began a term of supervised release which was supervised by the United States Probation and Pretrial Services Office ("Probation"). On June 3, 2013, Shelton listed 152 Hampton Boulevard, Rochester, New York as his residential address on a standard Probation form. There was no indication that Shelton had a secondary address, and at no time did Shelton advise Probation that he resided at any address other than 152 Hampton Boulevard.

The undisputed testimony of Wallace revealed that she has rented 597 Sawyer Street since February of 2011, and that Shelton was not a signatory to that lease agreement. Shelton did not pay or contribute to the monthly rent for 597 Sawyer Street, although Shelton paid the telephone and internet bill for service at 597 Sawyer Street. Wallace and Shelton were in a volatile relationship with each other for approximately four years, during which time Wallace

2

repeatedly told Shelton to leave her house, after which Shelton left and took his personal belongings with him.  Wallace testified that Shelton needed her permission to be inside her residence, and that Shelton did not have the authority to exclude her from the residence. Although Wallace repeatedly excluded Shelton from her residence, these exclusions were usually short lived, and many times Wallace allowed Shelton back in the residence the very next day.

Subsequent to Shelton's release from prison in May 2013, Wallace permitted Shelton to reside with her at 597 Sawyer Street.  On June 17, 2013, an argument occurred between Shelton and Wallace, and Wallace demanded that Shelton leave her residence.  Shelton complied and took with him the majority of his clothes.  On June 19, 2013, Wallace allowed Shelton to return to 597 Sawyer Street.  The next day, June 20, 2013, Shelton and Wallace again got into an argument, and Wallace told Shelton that he could not come back to her residence that night. Home alone at 597 Sawyer Street, Wallace locked the door so that Shelton could not enter.  By the time this occurred, the night of June 20, 2013 had become the early morning of June 21, 2013.

Notwithstanding Wallace's clear directions, Shelton came to 597 Sawyer Street, and Wallace again told him he was not welcome at her residence.  Instead of leaving, Shelton broke the front window of 597 Sawyer Street, and then entered the residence through the broken window.  Wallace never gave permission for Shelton to enter the residence, but Shelton went to the upstairs bedroom of the residence and laid down in Wallace's bed.  With Shelton now upstairs, Wallace called 911, but hung up and then left the phone off the hook.  Wallace testified that she did this so that the police would respond to her house without Shelton being aware that she had called the police.  A short time later, two officers from the Rochester Police Department arrived, and Wallace told them that she didn't want to have Shelton arrested, but that she wanted him out of her house.

3

The officers escorted Shelton out of the bedroom, after which they discovered the firearm that is the subject of this prosecution. Shelton was arrested, and Wallace consented to the officer's request for permission to search the entire house.

In order to challenge the officer's search of 597 Sawyer Street based upon a Fourth Amendment violation, Shelton bears the burden of establishing his standing to bring such a motion by a preponderance of the evidence. *United States v. Osorio,* 949 F.2d 38, 40 (2d Cir. 1991). The standing inquiry involves two separate, but related inquiries. First, a defendant must have a subjective expectation of privacy in the searched location, and second, that expectation of privacy must be one that society accepts as reasonable. *See, e.g., United States v. Hamilton,* 538 F.3d 162, 167 (2d Cir. 2008).

In his Report and Recommendation, Judge Feldman concluded that while Shelton had a subjective expectation of privacy in 597 Sawyer Street, that expectation was not one that society would accept as being objectively reasonable, and that Shelton therefore does not have standing to bring the present suppression motion. I agree.

In his objections, Shelton argues that because he had a longstanding relationship with Wallace and because New York State permits individuals in Section 8 housing – such as Wallace's tenancy at 597 Sawyer Street – to be "present with the consent of the person whose name is on the lease," Dkt. # 51, ¶ 34, his presence at 597 Sawyer Street on June 21, 2013 would be considered reasonable by society. This argument is without merit.

The simple, uncontroverted fact is that Shelton was excluded by Wallace from her residence on the date in question, and Shelton re-entered the house by breaking in. Since Wallace excluded Shelton from her house, 597 Sawyer Street was off limits to Shelton, and he therefore has no reasonable expectation of privacy in that residence. *See United States v. Osorio,* 949 F.2d 38, 41 (2d Cir. 1991) ("A guest cannot have even a subjective expectation of privacy in

4

those areas of the host's home that are off limits to the guest"); *see also United States v. Sanchez*, 635 F.2d 47, 63 (2d Cir. 1980) (trespasser wrongfully occupying the premises searched does not have standing to bring a Fourth Amendment claim).  Shelton's argument that society should accept as reasonable his privacy interest in someone else's house, after he was kicked out and then he broke back into, to put it politely, is nonsensical.  I agree with Judge Feldman that Shelton did not have a reasonable expectation of privacy in 597 Shelton Street at the time of the search in question, and as such, Shelton does not have standing to bring the present suppression motion.

For the foregoing reasons, I accept and adopt the Report and Recommendation filed by United States Magistrate Judge Jonathan W. Feldman (Dkt. # 48) in its entirety, and the Defendant's motion to suppress evidence (Dkt. # 25) is in all respects DENIED.

IT IS SO ORDERED.

Dated: February 4, 2015
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge